# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | |
|---|---|
| ENCODITECH, LLC, § | |
| § | |
| *Plaintiff*, § | Civil Action No. SA-18-CV-1335-XR |
| § | |
| v. § | |
| § | |
| CITIZEN WATCH COMPANY OF § | |
| AMERICA, INC., § | |
| § | |
| *Defendant*. § | |

## ORDER ON MOTION TO DISMISS

On this date, the Court considered Defendant's Motion to Dismiss (docket no. 13), Plaintiff's response (docket no. 25), and Defendant's reply (docket no. 26). After careful consideration, Defendant's Motion to Dismiss is DENIED.

## BACKGROUND

Plaintiff Encoditech, LLC brings this patent infringement suit, alleging the Proximity watch made by Defendant Citizen Watch Company of America, LLC infringes Plaintiff's patent. Encoditech was issued Patent No. 6,321,095 ("the Patent") on November 20, 2001. The Patent is titled "Wireless Communication Approach." Encoditech alleges it "relates to a mobile station that provides direct, wireless communications with another mobile station on a portion of a radio frequency (RF) band." Docket no. 1 at 3. Encoditech alleges the Patent addresses the problem of providing wireless communications methods that allow users to communicate and have private conversations, and it does so by "using a frequency division multiple access/time division multiple access communication protocol." *Id.* The Proximity watch allegedly infringes on Claim 7 of the Patent by providing notifications for social media, email, and events. *Id.* at 4. After Encoditech

1

filed its complaint on December 28, 2018, Citizen filed the Motion to Dismiss (docket no. 13) now before the Court on February 21, 2019.

## DISCUSSION

### I. Legal Standard

To survive a 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim for relief must contain: (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to the relief"; and (3) "a demand for the relief sought." FED. R. CIV. P. 8(a). In considering a motion to dismiss under Rule 12(b)(6), all factual allegations from the complaint should be taken as true, and the facts are to be construed favorably to the plaintiff. *Fernandez-Montez v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993). To survive a 12(b)(6) motion, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

### II. Application

Citizen argues that the Patent covers subject matter that is not patentable and that, even if it does cover patentable subject matter, not all elements of Claim 7 are met, so Encoditech does not state a direct infringement claim.

#### a. Patentable Under Section 101

Citizen argues the Patent is invalid under 35 U.S.C. 101. Section 101 of the Patent Act provides that one who "invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof" may obtain a patent. 35

U.S.C. § 101. Three categories—"laws of nature, physical phenomena, and abstract ideas"—are exceptions to the subject matter patentable under the Patent Act. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014). "[W]hether a claim recites patent eligible subject matter is a question of law which may contain underlying facts." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018).

This requires a two-part test derived from the Supreme Court's decision in *Alice*. First, the court determines "whether the claims at issue are directed to a patent-ineligible concept." Citizen argues the Patent covers an abstract idea. If the claims are not directed to a patent-ineligible concept, "the claims satisfy § 101 and [the court] need not proceed to the second step." *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1361 (Fed. Cir. 2018). Second, if the claim contains an abstract idea, the court evaluates whether there is "an 'inventive concept'— i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Alice*, 134 S. Ct. at 2355.

### i. *Alice* Step One

At step one, "the claims are considered in their entirety to ascertain whether their character as a whole is directed to excluded subject matter." *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015). "In performing step one of *Alice*, the Court should be careful not to oversimplify the claims or the claimed invention because, at some level, all inventions are based upon or touch on abstract ideas, natural phenomena, or laws of nature." *Encoditech, LLC v. Qardio, Inc.*, C.A. No. 1:18-864, 2019 WL 2526725, at *2 (D. Del. June 19, 2019). "At step one, therefore, it is not enough to merely identify a patent-ineligible concept underlying the claim;

[courts] must determine whether that patent-ineligible concept is what the claim is 'directed to.'" *Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*, 827 F.3d 1042, 1050 (Fed. Cir. 2016).

As to the first prong, Citizen argues the Patent claims nothing more than the longstanding, conventional concept of sending and receiving information to establish a secure line of communication between two points. Docket no. 13 at 14. In response, Encoditech claims that Citizen discusses Claim 7 only at a high level of abstraction, cutting out the exact technical methods and engineering design required by the claim. Docket no. 25 at 7-8 (citing *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016) ("[D]escribing the claims at such a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to §101 swallow the rule.")).

Citizen argues that Claim 7 only tries to achieve a mechanism to establish a secure line of communication between two points, using basic ideas like "selecting a communication channel using a conventional channelization protocol, sending information (i.e., a request) on a portion of that channel, receiving information (i.e., a response) on another portion of the same channel, and using conventional encryption techniques to secure communications." Docket no. 13 at 14. Citizen argues that when generic terminology is removed, Claim 7 could cover any generic process of establishing an encrypted communication session between two points. *Id.* at 15. Encoditech's statements that the invention was "not limited to any particular implementation," coupled with Claim 7's broad functional language, show, Citizen argues, that Encoditech's claims "cover only the resulting system the [patent] applicant envisioned, not how to implement it, much less how to do so in any non-conventional manner." *Id.*

Citizen argues Claim 7 risks preempting "all automated methods of systems for establishing a secure line of communication between two points" because the claimed system can

be implemented using any stand-alone handset, any suitable multiple access communication protocol, and any encryption algorithm. Docket no. 13 at 11. Encoditech argues it does not preempt all secure wireless communication, but instead "tackles a discrete problem in encrypting wireless messages with a well-described technical solution." Docket no. 25 at 10.

In deciding this issue, the Court notes a recent District of Delaware decision on similar motions to dismiss in three Encoditech cases. *See* Memorandum Order, ECF No. 34, *Encoditech, LLC v. Qardio, Inc.*, C.A. No. 1:18-864, 2019 WL 2526725 (D. Del. June 19, 2019) (deciding similar motions to dismiss in *Encoditech, LLC v. Bushnell Holdings, Inc.,* C.A. No. 1:18-2059, and *Encoditech, LLC v. Neurometrix, Inc.*, C.A. No. 1:19-151). That order denied the motions to dismiss, which raised the same Section 101 argument now before this Court. The Court finds this order well-reasoned and adopts its reasoning in large part.

In *Qardio*, applying *Alice* to the same Patent at issue here, the court determined it "does not claim an improved design or device, solution to a problem or method for securely communicating wirelessly, but rather generic technology using functional limitations." 2019 WL 2526725, at *4. Thus, that court determined the Patent was "directed to the abstract idea of establishing a secure wireless communication link and sending and receiving encrypted messages." *Id.* The Court agrees, and turns accordingly to step two.

### ii. *Alice* Step Two

"At step two of *Alice*, in searching for an inventive concept, the Court looks at the claim elements and their combination to determine if they transform the ineligible concept into something 'significantly more.'" *Qardio*, 2019 WL 2526725, at *2 (quoting *Alice*, 134 S. Ct. at 2355). This second step is met when the claim elements "involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry.'" *Berkheimer*,

5

881 F.3d at 1367 (citation and internal quotation marks omitted). "The inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art . . . . [A]n inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016). "Whether claim elements or their combination are well-understood, routine, or conventional to a person of ordinary skill in the art is a question of fact." *Qardio*, 2019 WL 2526725, at *2 (citing *Berkheimer*, 881 F.3d at 1368).

As to the second prong, Citizen argues there is nothing inventive about using a known process to send and receive data to establish a secure communications line between two points. Still, as did the *Qardio* court, the Court find there are fact issues at step two that weigh against dismissal at this stage. In particular, Encoditech argues the Patent's use of common key encryption is an inventive concept, as needed to pass step two, and inventive features "create a factual dispute regarding whether the invention describes well-understood, routine, and conventional activities." *Berkheimer*, 881 F.3d at 1369. Taking these allegations as true, Encoditech raises sufficient fact questions under *Alice* step two. Thus, the Court declines to dismiss Encoditech's complaint on this ground.

### b. Direct Infringement Claim

Under 35 U.S.C. § 271(a), a party directly infringes when, without authorization, that party "makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent." To state a viable direct infringement claim, a plaintiff must plead facts that plausibly suggest that the accused product meets each limitation of the asserted claim or claims. *Qardio*, 2019 WL 2526725, at *3.

The Federal Circuit recently weighed in on the pleading standard for direct infringement under *Iqbal* and *Twombly* in *Disc Disease Sols. Inc. v. VGH Sols., Inc*., 888 F.3d 1256 (Fed. Cir. 2018). In *Disc Disease*, the Federal Circuit found the plaintiff's allegations sufficient because the complaint specifically identified the three accused products and alleged that the accused products met "each and every element of at least one claim" of the asserted patents, either literally or equivalently. *Disc Disease*, 888 F.3d at 1260.

Citizen argues the direct infringement claim should be dismissed for failure to state a claim. Citizen argues that Encoditech fails to allege that the accessed product possesses every limitation stated in Claim 7. Docket no. 13 at 25. Claim 7 requires that "messages exchanged between the first and second mobile stations are encrypted using the Ckey," and Citizen contends that Encoditech does not allege this. *Id.* Encoditech argues it alleged that Citizen's app "provide[s] the encrypted message to the second mobile station" by, among other things, stating that "messages exchanged between the first and second mobile stations are encrypted" with the common encryption key. Docket no. 25 at 19.

The defendants in the three cases considered in the *Qardio* order made arguments like Citizen's. But as that court noted, "Encoditech only needed to identify and include product by name, allege that defendants make, sell, offer to sell, sell, import or use in the United States that accused product, and to allege that the accused product satisfies each and every limitation of at least one claim. And Encoditech alleges here in each of the cases that the defendant[] has performed all of the steps of claim 7 by its internal testing of the accused system." 2019 WL 2526725, at *6. The *Qardio* court found that Encoditech has thus "met the relatively low threshold for stating a claim of direct infringement set forth by the Federal Circuit in *Disc Disease* . . . ." *Id.*

Here, the Court reaches the same conclusion, as Encoditech has alleged all claim elements and has cleared the low *Disc Disease* bar.

## **CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss (docket no. 13) is DENIED.

It is so ORDERED.

SIGNED this 25th day of June, 2019.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE